Herbert William CHIPMAN,
Petitioner-Appellee,

v.

James MERCER, Chief Probation
Officer, Respondent-Appellant.

No. 79–2621.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1980.

Decided Sept. 4, 1980.

Arthur G. Scotland, Sacramento, Cal., for respondent-appellant.

Gayle C. Guynup, Sacramento, Cal., for petitioner-appellee.

Before WRIGHT, KENNEDY and HUG, Circuit Judges.

**529**

KENNEDY, Circuit Judge:

Herbert Chipman was convicted of burglary in state court. Chipman's conviction was upheld by the Third District Court of Appeal of the State of California, and a petition for hearing was denied by the California Supreme Court. Chipman then filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of California. The district court granted the petition on the ground that Chipman's sixth amendment right to confront witnesses was violated by the state trial court's refusal to permit cross-examination of a witness for bias. We affirm.

The name of the witness in question was Mrs. Ketchum. She testified that Chipman was near the scene of the burglary under suspicious circumstances. There was no other eye witness testimony. Circumstantial evidence linked Chipman to the burglary, but Mrs. Ketchum's testimony contributed significant additional information. She testified that she lived in the neighborhood and that on the night of the burglary she heard footsteps proceeding to and, later, from the victim's house. She said she recognized them as Chipman's because of the noise made by the platform shoes he often wore. She testified further that from her bedroom window she recognized Chipman clearly and saw him running while carrying a guitar case. A valuable guitar in its case was one of the items stolen from the victim's house.

Counsel for the defense undertook an extensive cross-examination of Mrs. Ketchum to test her credibility, bias, and memory. During the examination, counsel asked Mrs. Ketchum if she had ever conversed with a neighbor named Mrs. Ford. A relevance objection being interposed, there was an extensive offer of proof. Defendant's counsel said the question bore upon possible bias and prejudice that Mrs. Ketchum entertained. Counsel initially stated he wanted to show bias because Mrs. Ketchum disliked Mrs. Ford, who was Chipman's aunt. There was a later and more elaborate offer of proof permitted by the trial court, however, both with reference to the first question

about Mrs. Ford and other questions pertaining to events involving Mrs. Ford, the defendant, and the witness Ketchum. The defense offered to show that Mrs. Ford operated a residential care facility for mentally ill and retarded persons. The facility was located across the street from Mrs. Ketchum's house. Counsel offered to prove that Ketchum knew Chipman had lived in the facility, that Ketchum had previously accused residents of possessing stolen property, and that Ketchum had complained to the neighbors and circulated a petition to city officials in order to close the facility because it was not proper for the neighborhood and had undesirable occupants. It was the defense theory that by reason of her attitude and her former actions, Mrs. Ketchum might be hostile to or prejudiced against persons who had occupied the Ford house, including the defendant Chipman, and, moreover, that she stood to benefit if a former resident of the facility were convicted of burglary. The trial court rejected this more extensive offer of proof as well, stating the evidence would be excluded under Cal.Evid.Code § 352[1] on the ground that it was not probative of any personal hostility towards the defendant. The court did, however, permit defendant's counsel to cross-examine Ketchum about her possible general racial bias.

■ The Sixth Amendment guarantees the right of a defendant to confront the witnesses against him or her. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). *See also Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). This right to confrontation is embodied substantially by the right to cross-examine adverse witnesses. *See Davis, supra,* 415 U.S. at 315–16, 94 S.Ct. at 1109–1110; *Skinner v. Cardwell,* 564 F.2d

1381, 1388 (9th Cir. 1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978). As this court said in *Burr v. Sullivan,* 618 F.2d 583, 586 (9th Cir. 1980), "The right to confront witnesses guaranteed by the sixth and fourteenth amendments includes the right to cross-examine witnesses to show their possible bias or self-interest in testifying." Although, a trial court normally has broad discretion concerning the scope of cross-examination, *see* pp. 530, 531 *infra,* a certain threshold level of cross-examination is constitutionally required, and in such cases the discretion of the trial judge is obviously circumscribed. As the court in *United States v. Elliott,* 571 F.2d 880 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978), said:

> While the scope of cross-examination is within the discretion of the trial judge, this discretionary authority to limit cross-examination comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment.

*Id.* at 908, *quoting United States v. Bass,* 490 F.2d 846, 858 n.12 (5th Cir. 1974). When the cross-examination relates to impeachment evidence, the test as to whether the trial court's ruling violated the sixth amendment is "whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness." *United States v. Bleckner,* 601 F.2d 382, 385 (9th Cir. 1979); *Skinner v. Cardwell, supra,* 564 F.2d at 1389.

■ Confrontation questions must be resolved on a case-by-case basis based on examination of all circumstances and evidence. *United States v. Snow,* 521 F.2d 730 (9th Cir. 1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976). Neither

---

1. Cal.Evid.Code § 352 provides:

   *Discretion of court to exclude evidence.* The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

Federal appellate courts apply the same standard in reviewing a trial court's exercise of discretion pursuant to rule 403 of the Federal Rules of Evidence as do California courts in reviewing a trial court's ruling under California Evidence Code section 352. *See, e. g., Cain v. State Farm Mutual Auto. Ins. Co.,* 47 Cal. App.3d 783, 121 Cal.Rptr. 200 (Ct.App.1975); *People v. Fusaro,* 18 Cal.App.3d 877, 894, 96 Cal.Rptr. 368 (Ct.App.1971).

the confrontation clause nor the case-by-case approach to resolving confrontation questions should be interpreted to permit persons convicted in state proceedings to use putative sixth and fourteenth amendment claims as a vehicle for obtaining federal review of evidentiary questions properly left to resolution by the state courts. Two limiting principles can be identified, and others may be elaborated in appropriate cases. First, the confrontation clause applies to the essentials of cross-examination, not to all the details of its implementation. The provision should not become the source of a vast and precise body of constitutional common law controlling the particulars of cross-examination. From this follows a second, related concept: trial courts have broad discretion concerning the proper extent of cross-examination, to which appellate courts owe deference. *See, e. g., United States v. Bleckner, supra,* 601 F.2d at 385; *Skinner v. Cardwell, supra,* 564 F.2d at 1388–89 (federal courts); *Curry v. Superior Court,* 2 Cal.3d 707, 715, 87 Cal.Rptr. 361, 470 P.2d 345 (1974); *Cain v. State Farm Mutual Auto. Ins. Co.,* 47 Cal.App.3d 783, 798, 121 Cal.Rptr. 200 (Ct.App.1975); *People v. Fusaro,* 18 Cal.App.3d 877, 894, 96 Cal.Rptr. 368 (Ct.App.1971) (California courts).

We have recognized that "some topics may be of such minimal relevance that the trial court would be justified either in totally prohibiting cross-examination about them or in allowing only limited questioning." *Skinner v. Cardwell, supra,* 564 F.2d at 1389. *See also United States v. Nogueira,* 585 F.2d 23, 25–26 (1st Cir. 1978). *Davis v. Alaska* and our own precedents do not require a trial court to permit cross-examination on topics of very slight or marginal relevance simply upon the theory that bias or prejudice might be disclosed. Although it tips the scales in favor of permitting cross-examination, the confrontation clause does not prevent the trial court from weighing the offer of proof to determine its probative value to the trier of fact and its probable effect on fair and efficient conduct of the trial. Here, the ruling of the trial court no doubt was intended both to expedite the case and to avoid introduction of collateral issues that might distract the jury or commit its members to one side or the other of an emotional and potentially an extraneous issue, *i. e.,* the desirability of having an ordinary home in a residential neighborhood used as a facility for the retarded. The relevance of the proposed line of examination on the grounds of bias and prejudice was such, however, that we find the ruling did violate the defendant's right to confront witnesses.

Some kinds of animosities are so unlikely to color a witness' testimony that the trial judge might properly exclude testimony regarding them. For example, the sole ground for attempting to show bias may be that the witness dislikes a relative of the defendant for reasons unrelated to the defendant, such as an ordinary neighborhood dispute. Absent further facts justifying questioning, the confrontation clause arguably might not require cross-examination on this subject. Here, the grounds for a suspicion of bias were considerably more extensive and better founded.[2]

The present case involves a potential bias different from that in some other decisions, where the bias sought to be proved was that the witness favored the prosecution in hopes of better treatment for his own crimes. *See, e. g., Davis v. Alaska, supra; Burr v. Sullivan, supra.* These instances of potential bias appear with such frequency that the necessity to permit cross-examination should be readily apparent to the trial court. We concede that the instant case may not have presented such a routine application of the confrontation clause. Counsel have not directed us to, and we have not discovered, a case with facts re-

2. The unpublished decision of the state appellate court appears to have been based on the assumption that the only justification for the probe was the nephew-aunt relation. The appellate court offered no explicit ground to which we might give deference for excluding the probe for potential bias, based on the more extensive offer of proof. That expanded offer was considered by the state trial court and appears to have been timely.

531

sembling this one. Nevertheless, we think cross-examination here was required under principles sufficiently well established that it was a constitutional error to overlook them. *See generally* 3 J. Weinstein & M. Berger, Evidence § 607[03] (1978 & Supp. 1979); 3A J. Wigmore, Evidence §§ 940–53 (J. Chadbourn rev. 1970 & W. Reiser Supp. 1977); 3 D. Louisell & C. Mueller, Federal Evidence § 341 (1979), and cases cited therein.

It is true, as the state trial court pointed out, that the case does not involve allegations of particular enmity between the witness and the defendant. *See, e. g., United States v. Senak*, 527 F.2d 129 (7th Cir. 1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976); *United States v. Harvey*, 547 F.2d 720 (2d Cir. 1976); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338 (3d Cir. 1975); *Greatreaks v. United States*, 211 F.2d 674 (9th Cir. 1954). On the other hand, that a witness harbors a general bias against a group or class of which the defendant is a member, or an institution with which the defendant has some past or present association, does not make cross-examination concerning that possible bias irrelevant. *See, e. g., United States v. Kartman*, 417 F.2d 893, 897 (9th Cir. 1969) (cross-examination concerning witness' possible bias against draft-resisters or anti-war demonstrators). Bias of a general or pervasive sort is not, at least necessarily, less dangerous to objectivity than hostility to one individual. It is the potential for bias of either kind, and, if established, its value to the trier of fact, which determines if cross-examination is necessary in a given case. Examination for bias and prejudice must be permitted if it is reasonable to assume that animosity to a group might prejudice the witness, either consciously or unconsciously, against a defendant who shares the characteristics of that class.

Cross-examination of Mrs. Ketchum for possible bias and prejudice was especially important because her testimony was very significant to the case. The circumstantial evidence to prove the crime was not overwhelming, and Mrs. Ketchum was the only eyewitness whose testimony could place the defendant at the scene. Her testimony, moreover, was not given in terms of a general description which happened to fit this defendant. Instead, she claimed to know precisely who the defendant was from having observed him on earlier occasions. Counsel should have been permitted to probe the circumstances in which Mrs. Ketchum had previously acquired her knowledge of the defendant when it was alleged that those circumstances affected her attitude and motives toward him. The witness had identified the defendant as someone who had resided in Mrs. Ford's home. Defense counsel requested permission to inquire whether Mrs. Ketchum harbored a bias against Mrs. Ford and the residents of the facility, and in that connection to inquire whether she had sought to have the facility closed. Given this offer of proof, it was required that the defendant be permitted to examine the witness to determine if she harbored a bias or prejudice against the class composed of residents of the home.

There was a further possible source of bias which defense counsel had the right to explore, at least briefly. Defense counsel made an offer of proof, which all concede was in good faith, to show that Mrs. Ketchum had made statements accusing residents of the Ford home of possessing stolen property. The truth of that allegation, and the extent to which it might have affected Mrs. Ketchum's views about the defendant, was also within the zone of potential bias or prejudice upon which inquiry by defense counsel should have been permitted.[3]

Cross-examination for bias or prejudice is generally required only to the extent of exploring the subject with the witness, first in a preliminary way to determine if further inquiry is justified, and then

---

**3.** Some trial attorneys might decide to refrain from such questioning to avoid suggesting guilt, but those tactical decisions are for counsel. Once the defense chose to enter the area in this case, the confrontation clause required that some inquiry be allowed.

more extensively if the witness' responses or attitude appear to justify it. The argument of the state that this line of examination necessarily would require time-consuming extrinsic evidence from other witnesses to rebut the inference of prejudice is without merit. The trial court retains discretion to control the length and extent of the examination, and, in appropriate cases, to confine examination to the witness who is being tested, *see, e. g., Skinner v. Cardwell, supra.* The essence of the confrontation violation here is that examination into sources of potential bias or prejudice was foreclosed in its entirety.

Confrontation clause doctrine appears to require reversal if there is any error; whether the error was harmless in the particular case in not considered. *Davis v. Alaska, supra; Skinner v. Cardwell, supra.* But see *Bleckner, supra,* 601 F.2d at 385; *Patterson v. McCarthy,* 581 F.2d 220, 221 (9th Cir. 1978) (denial of confrontation requires reversal unless error is harmless beyond a reasonable doubt). The seeming harshness of that rule is diminished, however, because a confrontation clause violation generally does not occur unless the denied area of cross-examination is one of considerable relevance. Degree of relevance, in turn, bears a close relation to whether denial of confrontation was prejudicial. *See Skinner v. Cardwell, supra,* 564 F.2d at 1389. The automatic reversal rule is not, therefore, entirely divorced from considerations of prejudicial error in its ultimate operation, even if it is so in its bare statement.

We hold that the denial of cross-examination for bias or prejudice in this case violated the confrontation clause.

The district court's order granting the writ is AFFIRMED.