**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carl Brian WILLIS, Defendant-Appellant.**

Nos. 79–1769, 79–1770.

United States Court of Appeals,
Ninth Circuit.

Argued Sept. 11, 1980.

Submitted Sept. 26, 1980.

Decided June 5, 1981.

Rehearing Denied Aug. 10, 1981.

Michael J. Brennan, Balaban, Stern & Brennan, Los Angeles, Cal., for defendant-appellant.

Deborah Seymour, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before CHOY, Circuit Judge, KASHIWA,* Associate Judge, and FERGUSON, Circuit Judge.

CHOY, Circuit Judge:

Willis appeals from his convictions for failure to appear for trial (bail jumping), a violation of 18 U.S.C. § 3150, and for possession of cocaine with the intent to distribute, a violation of 21 U.S.C. § 841(a)(1). We reverse both convictions on the ground that the district court's refusal to permit cross-examination of a government witness as to his bias violated Willis' right to confront a witness against him. The case is remanded for a new trial on both charges.

### I. Facts

San Mateo police officers arrested appellant Carl Brian Willis outside his apartment on an outstanding traffic warrant and found an ounce of cocaine in his pocket. The police, together with Federal Drug Enforcement Administration (DEA) agents then searched Willis' apartment pursuant to a warrant they had already obtained. They found 383 grams of cocaine, chemicals used to process cocaine, and assorted narcotics paraphernalia.

Much of the information recited in the affidavit supporting the search warrant application had been obtained from Willis' former live-in girl friend, Annette Coleman, who had been in contact with the police for several weeks before Willis' arrest. The affidavit did not mention that a state narcotics officer, Griffin, had been having sexual relations with Coleman and had supplied her with a small number of Seconal pills (a controlled depressant).

Willis' first trial began on December 11, 1978, but ended in a mistrial when Willis failed to appear on the second day.

Seven months later, Willis was arrested at a Burlingame bar by Griffin, assisted by several Burlingame officers. Griffin, who knew the bar to be frequented by drug traffickers, was there on duty. When accosted by the police, Willis asserted a false identity, saying he had just flown into town and had no identification with him. In fact, he had his driver's license and a business card, each identifying him as Willis.

At Willis' second trial, at which he faced the added charge of bail jumping, Griffin testified about the circumstances of Willis' second arrest. Willis attempted to cross-examine Griffin on his relationship with Annette Coleman, ostensibly for the purpose of attacking Griffin's credibility by showing bias. The district court disallowed this questioning as irrelevant and beyond the scope of direct examination.

Later in the trial, a defense psychiatrist testified that due to a panic reaction Willis was unable to form the specific intent to jump bail. The doctor based his opinion on Willis' reported perceptions regarding his

---

* Honorable Shiro Kashiwa, Associate Judge, United States Court of Claims, sitting by designation.

plight in general, and specifically the treatment of his girl friend, Coleman, by police.

The prosecution, in its cross-examination of this doctor, attacked his opinion by questioning the accuracy of the underlying factual assumptions, including the Coleman-Griffin affair. Again, however, the court refused to allow Willis to establish these facts by examining Griffin.

After a day's deliberation, the jury informed the court that they were deadlocked on the intent-to-distribute charge and asked if they should proceed to consider the bail-jumping charge. (They had been instructed not to consider simple possession unless they were unanimous for acquittal on intent to distribute.) Willis then requested that the jury be allowed to consider the lesser included offense of simple possession. The court refused to allow the jury to consider the lesser offense on the ground that the Government was entitled to a verdict on the greater offense. By poll, the court established that the jury was indeed deadlocked on distribution. It sent them back to consider only the bail-jumping charge, on which they returned shortly with a guilty verdict. Over Willis' objection mistrial was then declared on the drug charge.

At his third trial, a bench trial, Willis submitted his case to the court on the record of the second trial. He was convicted of possession with the intent to distribute cocaine. He was sentenced to four years on the drug offense and three years for bail jumping, to be served consecutively. Willis appeals both convictions.

## II. Issues

1. Did submission on the record for the third trial constitute a waiver of claims of error on evidentiary rulings made in the second trial?

2. Did the district court violate Willis' right to confront an adverse witness by refusing to allow questioning of Officer Griffin about his relationship with Annette Coleman in order to show bias?

3. Was the affidavit sufficient to support the search warrant?

4. Did the second and third trials on the cocaine charge subject Willis to double jeopardy?

5. Did the district court err in refusing to allow the jury to consider the lesser included offense of simple possession when they became deadlocked on the charge of possession with intent to distribute?

6. Was the evidence sufficient to support the conviction for bail jumping?

## III. Analysis

### A. Preservation of Right to Appeal

■ There is a question as to whether Willis' submission on the record for the third trial on the cocaine charge constituted a waiver of claims of error on evidentiary rulings made in the second trial. Counsel has not cited, and we have not been able to locate, any cases on this specific point. An examination of the transcript of the third trial, however, shows that the trial judge assured Willis that by submitting on the record of the second trial he was preserving his right to appeal the ruling. The relevant portions of the transcript are as follows:

October 29, 1979

THE CLERK: Criminal 78–375 United States versus Carl Brian Willis, change of plea. Appearances.

MS. SEYMOUR: Deborah Seymour for the Government.

MR. OSTERHOUDT: William Osterhoudt on behalf of Mr. Willis who is present in custody.

Your Honor, I came to the view that what I would propose, with the Court's permission, was that in lieu of a change of plea at this time, we would be prepared on Mr. Willis' behalf to submit to Your Honor for decision the question of his guilt or innocence on the pending indictment on the basis of the testimony adduced at the prior trial. I have proposed that to Ms. Seymour and I understand basically it's agreeable if it's agreeable with the Court.

MS. SEYMOUR: The Government is agreeable to submitting the case without a jury on the record as adduced at the trial previously.

. . . .

THE COURT: As Mr. Osterhoudt strongly suspects, I am going to find Mr. Willis guilty on the record that's before me . . . .

. . . .

THE COURT: All right. Very well. Then it is stipulated that the matter is submitted to the Court on the record of the prior trial, which ended in a mistrial by reason of a jury disagreement with respect to this charge.

MR. OSTERHOUDT: Yes, sir. There's only one other thing I think I ought to mention that ought to be perhaps stated. Your Honor will recall that I objected to the declaration of a mistrial on the ground I felt the jury ought to have been permitted to consider the lesser included offense without unanimously agreeing on the greater. That technically translates into a double jeopardy sort of objection. I think I ought to state that for the record, although it's already been made in the form of an objection to the mistrial but it ought to be made here too.

THE COURT: I think you preserved that.

MR. OSTERHOUDT: Fine. Other than that, Your Honor, we are prepared to submit the matter to you on the record of the first trial.

MS. SEYMOUR: The Government so stipulates also.

THE COURT: Anything you want to say with respect to the judgment?

MR. OSTERHOUDT: No, Your Honor.

THE COURT: Well, as I have indicated, I thought the evidence was plain on the charge and I will find the Defendant guilty.

The transcripts reflect the following statement on November 9, 1979:

MR. OSTERHOUDT: Yes, Your Honor. I think at the outset I probably ought to renew for the record, although it may not be necessary, the various objections that had been made when we submitted the matter to Your Honor. I think I restated the double jeopardy objection which stemmed from the mistrial and I just wanted to make clear that it wasn't waived in any sense and that we do maintain that.

We find that under these circumstances Willis' right to appeal the evidentiary rulings was preserved.

### B. Cross-Examination of Griffin on His Relationship with Annette Coleman

Willis contends that his right of confrontation was violated by the court's refusal to allow him to attack Griffin's testimony by showing possible bias.

The sixth amendment guarantees a defendant the right to confront witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). The right to cross-examine adverse witnesses is a substantial part of this right. "The right to confront witnesses guaranteed by the sixth and fourteenth amendments includes the right to cross-examine witnesses to show their possible bias or self-interest in testifying." *Burr v. Sullivan*, 618 F.2d 583, 586 (9th Cir. 1980). Although trial courts have broad discretion in limiting cross-examination to avoid confusing the jury with collateral matters, *United States v. Weiner*, 578 F.2d 757, 766 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978), this court has recently held that the confrontation clause is violated where examination into sources of potential bias or prejudice is foreclosed in its entirety. *Chipman v. Mercer*, 628 F.2d 528 (9th Cir. 1980).[1]

1. The *Chipman* case concerned a witness named Mrs. Ketchum who testified that she saw the defendant Chipman near the scene of a burglary under suspicious circumstances. At trial, the defense offered to show that Mrs. Ketchum was potentially biased against Chipman due to her relationship with a Mrs. Ford, Chipman's aunt, who ran a residential care facility for mentally ill and retarded persons. The facility was located across the street from

The court in *Chipman* held that a confrontation-clause violation requires reversal regardless of whether the error was harmless in the particular case. *Chipman v. Mercer*, 628 F.2d at 533, *citing Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347; *Skinner v. Cardwell*, 564 F.2d 1381, 1388 (9th Cir. 1977), *cert. denied*, 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978). But the court also held that a confrontation violation does not occur unless the area involved is relevant to the trial. "We have recognized that 'some topics may be of such minimal relevance that the trial court would be justified in either totally prohibiting cross-examination about them or in allowing only limited questioning.'" *Chipman v. Mercer*, 628 F.2d at 531, *quoting Skinner v. Cardwell*, 564 F.2d, at 1389.

In this case, exposing Griffin's relationship with Annette Coleman might have shown a possible motive to lie; this revelation might also have impugned his general character and believability in the eyes of the jury.[2]

▆ The denied area of cross-examination in this case, the relationship between Coleman and Griffin, is one of considerable relevance to the issue of bias. Therefore the conviction must be reversed.

## C. *The Sufficiency of the Affidavit*

As stated above, much of the information in the affidavit supporting the search warrant had been obtained from Coleman.

Mrs. Ketchum's residence and the defense "offered to prove that Ketchum knew Chipman had lived in the facility, that Ketchum had previously accused residents of possessing stolen property, and that Ketchum had complained to the neighbors and circulated a petition to city officials in order to close the facility because it was not proper for the neighborhood and had undesirable occupants." 628 F.2d at 530. The trial court did not allow any questioning in these areas.

**2.** The psychiatrist testified that Willis' perception of the Coleman-Griffin affair was one of the factual underpinnings of his opinion that Willis could not form the specific intent to jump bail. In its cross-examination, the prosecution implied that this affair did not take place. The psychiatrist responded that if Willis

Willis contends that the officers' failure to disclose that their confidential source of information was Willis' girl friend, that Griffin had a sexual relationship with her, and that he gave her Seconal, rendered the affidavit insufficient to support the search warrant application.

In *United States v. Lefkowitz*, 618 F.2d 1313, 1317 n.3 (1980), the Ninth Circuit assumed without deciding that the test in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which invalidates warrants based on intentional or recklessly false statements essential to issuance of the warrant, also applies to affidavits which omit facts required to prevent technically true statements from being misleading. *Cf.* 17 C.F.R. § 240.10b–5(b) (Rule 10b–5) (material omissions as well as untrue statements give rise to securities violations).

*Lefkowitz* held that the failure to disclose in an affidavit that a secret informant was the estranged wife of the defendant was not fatal. First, the omission was not intentional or reckless; second, even if her identity had been revealed, the affidavit would still have supported a finding of probable cause. 618 F.2d at 1317.

Here, the agent who made out the affidavit testified that he did not know of the Coleman-Griffin affair at that time. Thus, the omission of this information was not intentional or reckless. Moreover, even had the magistrate known of these facts, Coleman could still have been found credible

had lied to him about everything his opinion might change; but if all else was true and only the Coleman-Griffin story a fabrication, his opinion would still hold.

During closing argument, the prosecutor specifically mentioned that no proof of the Coleman-Griffin affair had been shown. Even after an admonition about this improper argument, the prosecutor continued to refer to the affair as "alleged." It appears that the prosecution tried to take advantage of the exclusion of Griffin's testimony by suggesting that Willis' story was a fabrication.

If the jury believed Willis was lying about this story it is possible that his credibility would be destroyed and it is doubtful that the jury would credit his other assertions to the psychiatrist.

and her information reliable: (1) her information was specific, detailed and first-hand, (2) because she had lived with Willis, she was in a position to know the facts asserted, and (3) her statements to the police subjected her to penal risk (she admitted being a cocaine user) and personal danger (from Willis).

■ Thus, the district court did not err in finding that Coleman's information was credible and it correctly refused to suppress the evidence obtained through the search warrant.

### D. Double Jeopardy Claim

Willis' first trial on the cocaine charge ended in a mistrial when Willis failed to appear on the second day of trial. Willis asserts that when he failed to appear, the district court improperly failed to exercise its discretionary power to consider less drastic alternatives before declaring a mistrial. Thus, Willis argues, a retrial subjected him to double jeopardy.

■ Declaration of a mistrial is committed to the sound discretion of the trial court; express consideration of alternatives such as continuance is not required.

In *United States v. Tinney*, 473 F.2d 1085 (3d Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 156 (1973), a mistrial was held improper when declared 10 minutes after defendant failed to appear for closing argument because the court had failed to consider reasonable alternatives.

Here, however, the court recessed for two hours when Willis failed to appear at 9:30 a. m. on the second day of trial. After that period, Willis' attorney informed the court that Willis' location was unknown, that Willis could not be contacted at his home, and that Willis had not responded to any messages. It appears from the record that Willis had adequate notice that his trial would reconvene that morning. Thus, the clear implication was that Willis was "AWOL." [3]

■ Under these circumstances the court did not abuse its discretion in declaring a mistrial; Willis was not subjected to double jeopardy by retrial.

### E. The Jury Instruction on the Lesser Included Offense

When the jury returned deadlocked on possession with the intent to distribute, Willis requested that they be allowed to consider the lesser included offense of simple possession. The district court, which previously had instructed the jury to proceed to consider simple possession only if they were unanimous for acquittal on intent to distribute, refused to reinstruct the jury, saying that the Government was entitled to a verdict on the greater offense. Because of our reversal of Willis' convictions on another ground, it is unnecessary for us to reach this issue.

### F. Sufficiency of the Evidence to Support the Bail-Jumping Conviction

Willis contends that the evidence was insufficient to support the jury verdict convicting him of bail jumping.

■ Although we reverse the conviction on another ground, it is necessary to reach this issue because a reversal on the ground of insufficient evidence precludes a retrial because of double jeopardy.

In reviewing the jury's verdict for sufficiency of evidence, this court must view the evidence in the light most favorable to the Government. *United States v. Vissars*, 596 F.2d 400, 402 (9th Cir. 1979).

> We may take into account the evidence presented by the defendant in his own behalf. We must affirm the jury's verdict if "the evidence, considered most favorably to the government, was such as to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt." (Citations omitted.)

*United States v. Vissars, supra*, at 402, *quoting United States v. Jones*, 592 F.2d 1038, 1041 (9th Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979).

---

**3.** In fact, it was later discovered that Willis had flown to Mexico after the first day of his trial; he was not apprehended until seven months later.

Willis argues that the record does not show that he was *required* to appear or that he *willfully* failed to appear.[4] But at the close of the first day of Willis' first trial, the court indicated that trial would continue the next day and excused the jury "until tomorrow morning at 9:30." Willis was present to hear this. It is not necessary that the defendant be specifically admonished to return at a certain time. It was clear that Willis was required to appear the next day.

██ In *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980), this court stated that:

> Willfulness requires a specific intent to do something the law forbids; a general intent to commit the proscribed act is not enough.... Because willfulness is a state of mind, it rarely can be proved by direct evidence. Proof that an individual acted willfully ordinarily depends on inferences reasonably drawn from the evidence. (Citations omitted.)

Here the evidence showed that Willis had been a fugitive for seven months, that he tried to avoid recapture by assuming a false identity, and that he lied about not having any identification. From this, the jury permissibly could infer willfulness. Thus, the evidence was sufficient to support his conviction.[5]

### IV. *Conclusion*

The trial court's refusal to allow Willis to question Griffin concerning his relationship with Annette Coleman was a violation of Willis' sixth amendment right to confront a witness against him. Both convictions are REVERSED and the case is REMANDED for a new trial on both charges.

---

**4.** 18 U.S.C. § 3150 provides that penalties for bail jumping can only be applied where the failure to appear was willful.

**5.** Although we find that the evidence was sufficient to support the conviction, a reversal is required because of the total foreclosure on questioning of Griffin as to his relationship with Ms. Coleman. This information could be important to a jury on retrial.