**Charles R. BRIGHT, Petitioner-Appellant,**

v.

**Edwin SHIMODA, and Attorney General, State of Hawaii, Respondent-Appellee.**

No. 85–2498.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1986.

Decided June 5, 1987.

Earle Partington, Honolulu, Hawaii, for petitioner-appellant.

Peter Van Name Esser, Honolulu, Hawaii, for respondent-appellee.

Before KENNEDY, REINHARDT and BRUNETTI, Circuit Judges.

KENNEDY, Circuit Judge:

Petitioner Charles Bright seeks a writ of habeas corpus, claiming that the restrictions on cross-examination of a prosecution witness deprived him of the opportunity to confront the witnesses against him, in violation of the sixth and fourteenth amendments. We conclude that the restrictions were constitutionally permissible. We therefore affirm the conviction.

A Hawaii jury convicted Bright of murdering Zigmunt Zaborowski, generally known as Mike Todd. Bright admits he killed Todd, but maintains he did so in self-defense.

At trial, prosecution witness Carl Shank testified about a telephone conversation with Bright. In the state's view, this testimony established that Bright pressured a witness to lie, indicating that he was aware of his guilt. The relevant portion of Shank's testimony is as follows:

Q. Did he [Bright] talk to you about Mike Todd?

A. Oh yes, yes.

Q. What did he tell you about Mike?

A. He said that Mike seemed like a bad person, make him seem bad.

Q. He told you that the night before trial started?

A. Yes.

Q. What did you tell him?

A. I told him I got to tell the truth, you know. I got to say what I have to say and that's the truth.

During cross-examination, Bright's counsel offered an alternative explanation of the conversation: Bright merely urged Shank to tell the truth about Todd's violent

disposition. Shank rejected this explanation. To support his characterization of the conversation, Bright's counsel tried to ask Shank about particular criminal acts Todd had allegedly committed. The trial judge prevented him from doing so.[1]

Bright claims that the trial judge improperly restricted his cross-examination of Shank. In reviewing his claim, we must determine whether the trial judge allowed "adequate" and "effective" cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Skinner v. Cardwell*, 564 F.2d 1381, 1388 (9th Cir.1977), *cert. denied*, 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978). More precisely, we must determine whether the jury, without the cross-examination Bright desired, "[was] otherwise in possession of sufficient information upon which to make a discriminating appraisal of the subject matter at issue." *Skinner*, 564 F.2d at 1389.

■ As a matter of state evidence law, the trial judge's ruling was correct. Under Hawaii Rule of Evidence 405, cross-examination with regard to specific instances of conduct is permissible only if evidence of character or a trait of character is offered on direct examination. Haw.R.Evid. 405(a). Here, no such evidence was offered on direct. Shank testified about Bright's entreaties on the eve of trial, not about Todd's character. As the district court noted, "[t]he victim's character was not an issue ... until [the defendant] brought it up on cross-examination." Foreclosing cross-examination regarding specific instances of Todd's conduct was, therefore, entirely proper.

Bright contends that Shank's description of the telephone conversation constitutes character testimony. In support of this contention, he relies on a tortuous chain of inferences, proceeding roughly as follows: Bright urged Shank to describe Todd as a "bad person" but Shank refused; Shank therefore implied that Todd had good character; that implication constitutes character testimony. In our view, the chain is simply too attenuated to make inquiry into specific instances of conduct, with its attendant hazards, mandatory under the state's rules of evidence.

Questioning Shank about Todd's character would arguably have been permissible during Bright's self-defense case. *See*

1. The relevant portion of Shank's cross-examination is as follows:

Q. (Defense counsel): Let's talk a little bit about the [fourth, pre-trial] telephone call. Did [Defendant] call you when he talked to you to find out what you were going to say, isn't that right?
A. (Shank): Yes.
Q. He never told you to lie, did he?
A. On Sunday, yes.
Q. He did tell you to lie. What lie did he ask you to tell?
A. What lie he told me to say?
Q. Yes.
A. He told me to plea the fifth amendment and don't say nothing.
Q. Is that a lie?
A. That's just like.
Q. I'm asking is that a lie? That's not a lie. He asked you not to say anything. Is that what you're saying, is that right?
A. Yeah, I guess so.
Q. So he didn't ask you to lie. He asked you to say nothing?
A. No. He did tell me to lie. I say if he told me to—tell me to tell that Mike was a bad person, that's lying. That's not—
Q. Didn't [Defendant] say to you—
A. That's a lie, right?

Q. Didn't [Defendant] say to you that he wanted you to talk about the violence in Mike's past?
A. Excuse me?
Q. Didn't [Defendant] say to you that he wanted you to tell the Court about the violence in Mike's past, that Mike had been violent in the past?
A. No.
Q. He didn't say that to you?
A. Yeah, right.
Q. He asked you to talk?
A. He had told me.
Q. Mike's a violent person?
A. Yeah.
Q. And in fact Mike had been violent at times in his past, hadn't he?
A. Not around me.
Q. Haven't you ever heard that Mike had done violent things?
A. No, not Mike.
Q. You had never heard that he'd beaten up anyone?
A. No.
Q. Never heard that he robbed anyone?
A. That, yeah.
Q. You had heard that he had robbed someone, isn't that right?
[Prosecutor]: Excuse me, I want to object.

Haw.R.Evid. 405(b). However, Bright has never claimed that questioning Shank was part of his self-defense case. Instead, he has maintained that he attempted to introduce Todd's character on cross-examination to rebut the inference that he urged Shank to lie, a collateral inquiry that could be properly foreclosed by the trial judge.

Evidentiary rulings valid under state law may still violate the Constitution. *See e.g., Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Nonetheless, we strive to avoid the creation of a "vast and precise body of constitutional common law controlling the particulars of cross-examination" under the guise of the confrontation clause. *Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir.1980). Accordingly, we are reluctant to set aside a conviction when the defendant has enjoyed substantial cross-examination, particularly when the topic of cross-examination is a collateral matter. *See Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (confrontation clause does not guarantee cross-examination effective in whatever way and to whatever extent defense wishes).

■ Bright's counsel cross-examined Shank at length. He asked Shank whether Bright urged him to lie about Todd, and explored Shank's understanding of the word "lie." He asked Shank whether Todd was a bad person, and discussed Shank's idea of a "bad person." Throughout, he pressed Shank, albeit unsuccessfully, to adopt the defense's interpretation of the conversation with Bright. In sum, while Bright's counsel did not have the chance to take every possible tack with Shank, he did have the opportunity for substantial cross-examination.[2]

When substantial cross-examination has taken place, courts are less inclined to find confrontation clause violations. In *United States v. Barrett,* 766 F.2d 609 (1st Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985), for example, the

court affirmed a conviction despite the trial judge's restriction of cross-examination concerning a witness' unprosecuted crimes. The court held that cross-examination regarding the witness' plea agreement provided the jury with sufficient information about the witness' potential bias, and rejected the confrontation clause challenge. Similarly, in *Batchelor v. Cupp,* 693 F.2d 859 (9th Cir.1982), the court affirmed a conviction despite the trial judge's restriction of cross-examination concerning drug use by key witnesses. The court did not deny that the witnesses' drug use was relevant, but decided that other evidence of it, already before the jury, satisfied the confrontation clause.

In addition to the amount of cross-examination permitted, another factor counseling affirmance is the collateral nature of the additional cross-examination Bright desired. That cross-examination did not concern Todd's death, Bright's state of mind, or Shank's credibility. Instead, it involved Shank's knowledge of Todd's allegedly violent behavior, a subject that may fairly be described as tangential.

Under similar circumstances, the courts have turned away confrontation clause challenges. In *United States v. Muelbl,* 739 F.2d 1175 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 388, 83 L.Ed.2d 322 (1984), for example, the court affirmed a conviction in spite of the trial judge's restriction of cross-examination concerning prior drug transactions. Noting that such transactions, though relevant, were outside the scope of the charged conspiracy, the court upheld the trial judge's ruling. Similarly, in *United States v. Kennedy,* 714 F.2d 968 (9th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984), the court affirmed a conviction in spite of the trial judge's restriction of cross-examination concerning a witness' sexually abusive behavior. Conceding that the existence of such behavior would support the defense's claim that the witness

---

2. Moreover, Bright himself testified about Todd's violent behavior. Over prosecutorial objection, he described Todd's participation in incidents of rape, robbery, and kidnapping.

Cross-examination of Shank concerning these acts would, therefore, only have produced corroborative character evidence.

was actually the perpetrator of the crime, the court nonetheless deemed the matter collateral and upheld the trial judge's ruling.

Bright's counsel engaged in substantial cross-examination on a collateral matter. In our view, that is sufficient to sustain the conviction.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

As the majority acknowledges, the state sought to establish that the defendant had guilty knowledge through Shank's disputed testimony. The state contended, as did its witness Shank, that the defendant "lied" when he asked Shank to testify that the deceased was a bad person.

The defendant's counsel was attempting through cross-examination to show that Shank was aware at the time of the telephone conversation that the deceased had committed a series of violent acts. Had he been able to establish this point, the state's theory that the defendant had lied and by his conduct shown his awareness of his guilt would have been wholly disproved. Counsel was attempting to go beyond the witness' general assertions and ask him about specific incidents in which the victim committed violent acts. It was this line of questioning that the trial court prohibited.[1]

Based upon my review of the facts adduced at trial, I believe the case was a close one. There were no eye witnesses to the shooting and the affirmative defense offered—self defense—was a plausible one. Shank's testimony that the defendant asked him to lie was an important part of the prosecution's case. Any acknowledgment of guilt by the defendant, direct or implied, would have been critical. Under these circumstances, the right to effective cross-examination was of the upmost importance. I believe, in light of these circumstances, that the trial judge clearly committed constitutional error when he precluded the inquiry into Shank's knowledge of the victim's specific violent conduct.

I am concerned that the important constitutional right of confrontation is being eroded by decisions such as the majority's. More and more frequently, courts seem to justify serious trial errors on the ground that the error really doesn't matter. Also, more and more frequently, we hide our errors by saying that as a practical matter the defendant received most of what he was entitled to. These are the "no harm—no foul" arguments. The problem with these arguments is that they all too often are used in cases such as the one before us where great harm may in fact result from our failure to afford defendants their full constitutional rights—and not just in legitimate harmless error cases. Another increasingly popular approach by which we summarily dispose of legitimate constitutional claims is the "nobody's perfect" approach. We proclaim, as if we are revealing an important truth rather than simply uttering a platitude, that we cannot expect trials without errors. Again, what we all too often do as a result of our use of this approach is justify the deprivation of a defendant's constitutional right. Increasingly, in cases like the one before us, we are sacrificing individuals' rights in the name of judicial efficiency, or, to put it less politely, judicial expediency.

Here, it would have taken but a short time for the court to permit defendant's counsel to conduct the searching, probing cross-examination to which his client was entitled. To say, as the majority does, that such questioning is unimportant and that permitting a few general inquiries of an adverse witness is sufficient, is, in my view, to reveal a basic misunderstanding of the nature and purpose of the right of cross-examination.

---

**1.** As the district court put it in its unpublished order and opinion, "The petitioner's counsel sought to ask Shank about specific violent acts of the victim."