942 F.2d 792
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William F. JOHNSON, Petitioner-Appellant,
v.
James BLODGETT, Superintendent, Respondent-Appellee.
 No. 90-35893.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 29, 1991.*
Decided Aug. 15, 1991.
As Amended on Denial of Rehearing and Rehearing En Banc
Dec. 17, 1991.
 
 Before EUGENE A. WRIGHT, BEEZER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This is an appeal from an order denying Johnson's petition for writ of habeas corpus. The issues:
 
 
 3
 (A) Did the limitations placed by the trial court on the scope of Johnson's cross-examination of a prosecuting witness deny him his rights under the Confrontation Clause?
 
 
 4
 (B) Did the limitations placed on the scope of Johnson's proffered defense testimony deny him an opportunity to present a defense?
 
 
 5
 (C) Did the alleged evidentiary and procedural errors at trial render Johnson's trial fundamentally unfair?
 
 
 6
 The appeal was timely and we have jurisdiction under 28 U.S.C. § 1291.
 
 
 7
 Johnson and coconspirator Donald Schutte were convicted for first degree murder, theft and conspiracy to commit murder. The convictions were returned after trial to a jury in the state superior court in 1985. Both Johnson and Schutte pursued direct appeals to the Washington Court of Appeals which affirmed. Discretionary review was denied by the Washington Supreme Court.
 
 
 8
 We quote from the opinion of the Washington Court of Appeals:
 
 
 9
 Mike Carnahan was brutally murdered by several shotgun blasts and then his body was severely burned to prevent identification. During questioning by the FBI on an unrelated matter, Gary Kulbeth testified that he drove to California with Johnson and Schutte in Carnahan's van. When he asked where Carnahan was Johnson initially told him: "He is no longer with us." Later in the trip Johnson said, "We killed him." To which Schutte added, "It was the scariest thing I ever saw." Kulbeth further testified, "Don Schutte said that we got him up in the mountains, told him there was $8,000 under a rock. He bent over to get the rock, and when he bent over to get the rock, we shot him." Schutte added that Carnahan initially ran but that Johnson and he finally killed him.
 
 
 10
 When they arrived in California, Kulbeth unloaded a .12 gauge and a .20 gauge shotgun from the van. The .12 gauge shotgun had been purchased by Johnson at a Renton pawn shop on July 10 and was later identified as having fired two of the shells found at the murder scene.
 
 
 11
 The police discovered the body through information supplied by Carnahan's girl friend who overheard directions given to Carnahan by Johnson. Carnahan told her that he was going to pick up some money. It was from these directions that the police eventually discovered Carnahan's remains in the mountains. Schutte did not testify. Johnson testified that Kulbeth committed the murder.
 
 
 12
 In April 1989, Johnson filed a petition for writ of habeas corpus in the federal district court. Upon the respondent's motion for summary judgment, the magistrate judge concluded that none of Johnson's claims warranted habeas relief and recommended the district court deny the writ without an evidentiary hearing. The district court adopted the report and recommendation, granted the respondent's motion for summary judgment, and dismissed Johnson's petition with prejudice.
 
 
 13
 State court convictions and sentences are accorded a presumption of finality and legality in federal habeas corpus proceedings. Barefoot v. Estelle, 463 U.S. 880, 887 (1983). The scope of our review in these cases is "the narrow one of due process, and not the broad exercise of supervisory power that we possess in regard to our own trial courts." Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974).
 
 
 14
 Johnson's first two claims challenge the trial court's exclusion of evidence. "Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990) (citing Lincoln v. Sunn, 807 F.2d 805, 816 (9th Cir.1987), cert. denied, 111 S.Ct. 974 (1991)). "The state court's decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due process rights." Id.
 
 
 15
 The essential inquiry in habeas review is whether the defendant can clearly show that his interest in presenting the evidence outweighs the state's interest in exclusion. To succeed on these claims, Johnson must show trial errors which render the trial "so arbitrary and fundamentally unfair that it constitutes a violation of federal due process." Powell v. Spalding, 679 F.2d 163, 166 (9th Cir.1982). In our evaluation of these claims, we must give considerable weight to the state interest in preserving orderly trials, in judicial efficiency, and in excluding unreliable and prejudicial evidence. Miller v. Stagner, 757 F.2d 988, 994-95, amended on other grounds, 768 F.2d 1090 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986).
 
 
 16
 * Johnson argues that the trial court's ruling restricting his testimony was a violation of his constitutional right to present a defense. Defense counsel made an offer of proof that Johnson would testify that Kulbeth was involved in a drug deal with the victim, Carnahan, and that an argument concerning that deal took place immediately before the murder. The trial court ruled that Johnson was precluded from making any reference to the drug transaction. Johnson was allowed to testify that he saw Carnahan give Kulbeth a bag of $20 bills in a tavern parking lot and that nine days later he saw Kulbeth kill Carnahan after the two had an argument. Johnson also testified that when he was arrested for murder, he believed Kulbeth had $20,000 of Carnahan's money.
 
 
 17
 A criminal defendant has a fundamental constitutional right to testify in his own defense, but the right is not absolute. It must yield to other legitimate interests in the criminal trial process. Rock v. Arkansas, 483 U.S. 44, 55 (1987).
 
 
 18
 To determine whether there has been a constitutional violation, the importance of the evidence offered by the defendant must be weighed against the state's interest in exclusion. Miller v. Stagner, 757 F.2d 988, 994 (9th Cir.1985).[1]
 
 
 19
 We consider five factors: (1) the probative value of the evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is merely cumulative or the only evidence on the issue; and (5) whether it is a major part of the attempted defense. Id.
 
 
 20
 Evidence of the Kulbeth-Carnahan drug deal would have no bearing on the central issue in the case, would be of minimal probative value and concerned collateral issues. The state's interest in avoiding confusion of issues or unsupported jury speculation justifies the application of the state's evidentiary rules excluding the evidence. Perry v. Rushen, 713 F.2d 1447, 1452-53 (9th Cir.1983), cert. denied, 469 U.S. 838 (1984).
 
 
 21
 Testimony that Kulbeth was involved in a drug deal would have confused the issue. Further, the reliability of the proffered testimony is questionable, carrying the potential for unfair prejudice. Johnson's right to present this evidence was not constitutionally infringed.
 
 
 22
 Johnson also offered to testify that he had planned to rob a bank with Kulbeth on the day of the murder and that the two of them went to California with codefendant Schutte two days after the murder to investigate the possibility of robbing banks there. His theory appears to be that this would have shown that Kulbeth had a motive to cover up illegal activities and to curry favor with the authorities in the expectation that they would not charge him with any crimes.
 
 
 23
 But none of these alleged bank robbery plans had any bearing on the central issue of murder. If the evidence was offered to undermine Kulbeth's credibility, it was cumulative, similar to many other efforts during the trial. Counsel for both Johnson and Schutte devoted the bulk of their closing arguments to attacks on Kulbeth's credibility. In any event, the alleged bank robbery plans were unsupported by any other evidence. These plans did not suggest a motive for killing Carnahan. There was no error in excluding this testimony.
 
 
 24
 The defendant sought to introduce the testimony of JoAnne Wellman (Johnson's ex-wife and mother of codefendant Schutte). She would have testified that one or two months before the Carnahan murder, she overheard Kulbeth solicit Schutte to commit a murder. The defense did not establish any connection between that alleged solicitation and the charged offense. The theory apparently was that because Kulbeth may have sought another person's murder on an earlier occasion, he was therefore predisposed to commit a murder on a later occasion. At trial defense counsel argued that, "Perhaps, that maybe," the unidentified person was actually Carnahan. This was unfounded speculation. The trial judge acted wisely within his discretion in disallowing this line of questioning. Johnson's proffered testimony, his own and that of Wellman, was of little probative value on the central issue of Johnson's guilt or innocence.
 
 II
 
 25
 Did the court's limitation on Johnson's cross-examination of Kulbeth violate the confrontation clause? The Sixth Amendment protects the right of a defendant to confront adverse witnesses. Davis v. Alaska, 415 U.S. 308 (1974). Cross-examination is the essence of this right. Id. at 315-316. The confrontation clause applies only to the essentials of cross-examination, however, not to the details of its implementation. Chipman v. Mercer, 628 F.2d 528, 531 (9th Cir. 1980). Courts have resisted the temptation to develop a vast, detailed body of constitutional common law controlling the precise contours of allowable cross-examination. See id. Trial courts retain broad discretion to control cross-examination; the Sixth Amendment provides a floor, above which the trial courts are free to limit cross-examination in accord with local law.
 
 
 26
 When the trial court does not merely limit but instead prohibits the defendant from inquiring into sources of potential bias and prejudice, the court likely violates the confrontation clause. See id. at 533. On the other hand, when a court allows substantial cross-examination, we are less likely to find a violation. Bright v. Shimoda, 819 F.2d 227, 229 (9th Cir. 1987), cert. denied, 485 U.S. 970 (1988). Johnson presents just such a case.
 
 
 27
 Johnson's counsel engaged in an extensive cross-examination of Kulbeth. He attacked Kulbeth's credibility, establishing that Kulbeth was a "hustler," with gambling as his sole source of income. He also forced Kulbeth to concede that he had lied repeatedly to the FBI and that the FBI had provided him with information about the murder before he made his statement. The examination further revealed that Kulbeth had abused narcotics on numerous occasions.
 
 
 28
 Johnson's counsel explored past conflicts between Johnson and Kulbeth; Kulbeth admitted that after Johnson had fired him, Kulbeth had threatened to "kick his ass." He conceded that he had taken substantial amounts of money from Johnson, and rather than return it he had spent it. In addition, counsel established that Kulbeth kenw how to use a shotgun. In short, Johnson's counsel undermined Kulbeth's credibility and established a motive for Kulbeth to fabricate a story implicating Johnson for murder.
 
 
 29
 Johnson's counsel nevertheless asked to extend the cross-esamination. In particular, he wanted to question Kulbeth about Kulbeth's alleged solicitation of Schutte to murder some unnamed person. Counsel conceded that he had no basis, other than his own speculations, for concluding that the alleged solicitation related in any way to this murder. He also sought to establish that Johnson and Kulbeth had planned bank robberies together. He did not suggest that this provided Kulbeth with an incentive to curry favor with the authorities: he stated simply that these factors were important in developing the relationship between Kulbeth and Johnson. When the court pressed counsel on this issue, asking how it related to motive and bias, counsel failed to respond, pointing instead to the importance of developing the solicitation evidence.
 
 
 30
 The trial court did not violate Johnson's confrontation rights when it refused to allow counsel to extend the cross-examination to these matters. Counsel failed to articulate a cogent theory of admissibility, and the trial court acted well within its sound discretion in excluding the evidence. This case stands in sharp contrast to those instances in which we have found a violation.
 
 
 31
 For example, in Chipman we noted that "examination into sources of potential bias or prejudice was foreclosed in its intirety." 628 F.2d at 533. The trial court had precluded defense counsel from exploring evidence that a key prosecution witness was biased against the class of people including the defendant. 628 F.2d at 531-32. Here, substantial cross-examination was allowed, and the precluded testimony had little to do with the defense theory of bias.
 
 
 32
 We have considered Johnson's other arguments and find them to be without merit.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Stagner test was derived from Perry v. Rushen, 713 F.2d 1447 (9th Cir.1983), cert. denied, 469 U.S. 838 (1984), in which the defendant was prohibited from presenting the testimony of witnesses other than himself. The Perry-Stagner factors apparently have not been applied by this court to a case where the defendant's own testimony has been curtailed. Johnson argues that Perry and its progeny are inapposite. We see no reason to restrict application of the Perry-Stagner test to those cases involving witnesses other than the defendant