[No. 3,680.]

LAMORA SILVEY AND CHRISTOPHER SILVEY BY
    MARY ANN SILVEY, THEIR GUARDIAN AD LITEM, AND
    DAVID E. ALLISON AND LILLY ALLISON, BY SAID
    DAVID E. ALLISON, HER HUSBAND, v. SUSAN
    MEDORA HODGDON, CHARLES H. HODGDON,
    HER HUSBAND, AND THE PACIFIC MUTUAL LIFE
    INSURANCE COMPANY.

ASSAILING CREDIBILITY OF A WITNESS.—The credibility of a witness may
    be assailed by proof that he cherishes a feeling of hostility toward the
    party against whom he is called; and this hostility may be established
    by proof of the acts or declarations of the witness, provided his atten-
    tion is first called to the particular acts or declarations proposed to be
    proved, with sufficient minuteness as to time and circumstances.
IDEM.—If it is proposed to assail the credibility of a witness by a letter in
    which hostility is shown to the party against whom he is called, and the
    letter is shown to the witness, and he denies writing it, the handwriting
    may be proved by other witnesses.

APPEAL from the District Court, Fourth Judicial Dis-
trict, City and County of San Francisco.

The plaintiffs, Lamora Silvey, Christopher Silvey and
Lilly Allison, were the infant children of Anthony Silvey,
whose life was insured.

The other facts are stated in the opinion.

J. M. Seawell and Lake & Williams, for the Appellants,
argued, that the Court erred in not permitting defendants
to prove by the witness George C. Hickox, that the letter
was written by Almira Carey, as she had denied that she
wrote it, and the letter manifesting great hostility to the
appellant, her denial was a proper subject of contradiction;
and cited Baker v. Joseph, 16 Cal. 173; Rex v. Yervin, 2
Camp. 638; Long v. Larkin, 9 Cush. 361; Dervey v. Wil-
liams, 43 N. H. 384; Tyler v. Pomeroy, 8 Allen, 480; Collins
v. Stephenson, 8 Gray, 438; Coombe v. Winchester, 39 N. H.
13.

Sullivan & Turner, for the Respondents, argued that, as

Almira Carey was asked by appellants' counsel, on cross-examination, if she wrote the letter, and denied writing it, they were bound by her answer, it being new matter called out by them.

By the Court, CROCKETT, J.:

The complaint alleges in substance, that one Silvey caused his life to be insured in the name of his married daughter, Mrs. Hodgdon; and at the time of making the application, Mrs. Hodgdon stated to him that if he would have the policy made payable to her, she would, on his death, instruct and cause the insurance company to pay the amount of the policy to his three minor children; that confiding in this statement, "it was then and there understood and agreed by and between them, the said Anthony Silvey and the said Susan, that such policy of insurance, with the name of the said Susan Medora Hodgdon as the payee thereof, should be so issued, and that the said Susan should cause the insurance company, on his death, to pay the amount of the policy to the three minor children;" and that said Susan should, in fact, be such payee, only in trust for the said minor children, and that such policy of insurance should in fact be only for the use and benefit of them, the said minors.

There is no averment that the agreement, as to the trust, was in writing. The complaint then avers that the policy was issued as agreed upon; and it appears on the face of the policy, a copy of which is annexed to and forms a part of the complaint, that the premium was paid by Mrs. Hodgdon; and that the policy is payable to her, "for her sole use, if living; or, if not living, to her heirs or legatees, in conformity with the statute."

It is further alleged that Silvey paid all the premiums, and is dead, and the policy has become payable; but that Mrs. Hodgdon denies the trust, and demands that the policy be paid to her for her exclusive use; that she and her husband are unable to respond in damages for a breach of the trust, and prays that the trust be established by the judgment of the Court, and that the policy be paid to the plaintiffs, who are the three minor children of Silvey. A

judgment as prayed for having been entered for the plaintiffs, Mrs. Hodgdon and her husband prosecute this appeal.

The Court, on conflicting evidence, found the contract to have been proved as alleged; and we cannot disturb the finding on the ground that it was not justified by the evidence.

At the trial, one of the most important witnesses for the plaintiffs was a married sister of the plaintiffs and of the defendant, Mrs. Hodgdon. In her testimony she evinced considerable hostility towards Mrs. Hodgdon; and on her cross-examination a letter was produced by the defendants signed "Ida," and addressed to "My Dear Charles," on the face of which it appeared that the person to whom it was addressed was a married man, and not the husband of the writer. It is as follows: "When you come to see your Ida, knock three times, and do not ring the bell. Then I will know it is you, darling. How is that old woman? Is she declining every day? Does her heart trouble her as much as ever? Poor old hypocrite! Oh! Charles, it seems as if I cannot wait. I am afraid she may possibly live longer than you or I. Give her a dose; nobody will find it out. She is mad with all her relations, and none of them will trouble you—they all know what you married her for. * * * * Come and see me, darling, as soon as possible. The present that you gave me, I cherish dearly.' She—is always talking about that first husband of hers, and said she would like to see his baby. She speaks to him. I saw her myself, and, I believe, has been to see tho child. Charles, I have so much to tell you. Good-bye, my darling. From your loving Ida."

On being shown the letter by the counsel for the defendants, the witness was asked whether she wrote it; to which she replied that she did not. Subsequently, the defendants called an expert in handwriting, and asked him whether the letter and the signature of the witness to an affidavit, admitted to have been made by her, and on file in the cause, were not in the same handwriting? On the objection of the plaintiffs, the question was excluded by the Court, and this ruling is relied upon as error. If the ques-

tion had been accompanied by an offer to prove that the letter was in fact addressed to the defendant, Charles H. Hodgdon, or was intended for him, the evidence would have been clearly competent.

The credibility of an adverse witness may be assailed by proof that he cherishes a feeling of hostility towards the party against whom he is called; and it may be established by proof of the acts or declarations of the witness; provided his attention is first called to the particular acts or declarations proposed to be proved, with sufficient minuteness as to time and circumstance, to afford him an opportunity to explain. (*Baker* v. *Joseph*, 16 Cal. 173.) If this letter was in fact written by the witness, and was addressed or intended to be delivered to the husband of her sister, Mrs. Hodgdon, it would afford the most convincing proof not only of her moral depravity, but also of her bitter hostility to her sister; but there was no offer, in terms, to show that the letter was addressed to or was intended for the defendant, Charles H. Hodgdon. Nevertheless, we think enough had already been disclosed by the evidence to warrant a presumption that such was the fact, provided the letter was written by the witness, (on which point we, of course, express no opinion.) But if it be assumed that she was the author of it, the following facts which were in evidence, would tend to show that it was intended for the defendant, Charles H. Hodgdon: 1st. That Mrs. Hodgdon was divorced from her former husband, who is still living, and was a witness on the trial of this cause. In the letter, the wife of the person to whom it is addressed, is described as having a former husband living. 2d. The letter is addressed to "My Dear Charles," and Charles is Hodgdon's christain name; and, 3d. The letter describes the wife as "mad with all her relations," and the proof shows that Mrs. Hodgdon was at enmity with her mother and sisters; 4th. The witness admitted on the stand that she was not on friendly terms with her sister, Mrs. Hodgdon; 5th. The letter comes from the custody of the defendants, one of whom is claimed to have been the person to whom it was addressed. We think these circumstances are sufficient to show, *prima facie*, that the

letter was intended for Hodgdon, if it be assumed that the witness was the author of it; and that the Court erred in excluding the testimony of the expert.    Some other points have been discussed by counsel, but we deem it unnecessary to notice them.

Judgment and order reversed, and cause remanded for a new trial.

Mr. Justice RHODES did not express an opinion.