[No. B005331. Second Dist., Div. Seven. Apr. 29, 1985.]

In re ANTHONY P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY P., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*The entire opinion is certified for publication pursuant to rules 976 and 976.1 of the California Rules of Court with the exception of part II.

504

COUNSEL

Howard J. Stechel, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow, Robert R. Anderson and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**JOHNSON, J.**—Anthony Dwayne P., a 17-year-old minor, appeals from the order continuing wardship (Welf. & Inst. Code, § 602) entered upon findings that he molested a child under the age of 18 and committed battery (Pen. Code, §§ 647a, 242). He was committed to the Youth Authority for a maximum period of confinement of six years and two months, with credit for 553 days of previous custody.[1] He contends:

"I. The evidence was insufficient to sustain the petition. A reasonable doubt existed with respect thereto requiring that the minor be acquitted and the petition dismissed.

"II. The restriction of cross-examination as to racial bias and prejudice was improper and prejudicial to the minor's right to confront and cross-examine his sole accuser and this deprivation requires that the adjudication be reversed.

"III. The trial court admitted prejudicial hearsay statements of the complaining witness which were used to convict this minor requiring that he be granted a new trial.

"IV. The prosecutor injected unproven and inadmissible prior offenses into the trial phase of the proceeding and referred to the minor in prejudicial terms requiring that the minor be granted a new trial.

"V. The aggregation of offenses against the minor was done without proper notice and the sentence imposed should be vacated.

"VI. The sentence was apparently based on the assumption that the offense prohibited by Penal Code, section 647a carried a maximum sentence of up to one year whereas said section states that the offense charged carries a sentence of up to six months except in cases not here applicable. The sentence should accordingly be reconsidered." We find appellant indeed was denied his constitutional right to cross-examine the complaining witness about racial bias and therefore reverse.

### Facts and Proceedings Below

The complaining witness Deborah M., a 15-year-old white girl, and the appellant, a 17-year-old black, were students at Taft High School in Los

---

[1]The petition filed in this matter contained, inter alia, the following allegation: "The minor is notified that the People seek to have minor confined on all sustained counts of this petition, other petitions currently before the court, and previously sustained petitions with detention time remaining." The period of confinement ordered for appellant was determined by utilization of three previously sustained petitions, in addition to the present matter.

Angeles. According to Deborah M.'s testimony at trial, she was standing near her locker during fifth period when appellant approached and asked for a date. Ms. M. refused and started to walk away. Ms. M. testified appellant then followed her and repeatedly grabbed her in the area of her bust, buttocks and crotch. Ms. M. fled and appellant followed. She ultimately saw schoolmate Michael P. and requested his assistance. During cross-examination, appellant's counsel asked Ms. M. whether she had "a prejudice against black people," to which she responded in the negative. Counsel next asked, "Would it offend you if a black person asked you for a date?" The prosecutor's objection to this question was sustained.

Michael P. testified that when Ms. M. approached she was "upset and emotionally nervous," and stated appellant had just molested her. Michael P. then ran up to appellant and questioned him. Appellant denied touching Ms. M. No witnesses testified to having observed appellant following or touching Ms. M. in any way.

In his defense, appellant testified that when he approached Ms. M., he only told her she was pretty, after which they went their separate ways. Appellant denied touching or following Ms. M.

At the close of the adjudication hearing, the district attorney orally reminded appellant that aggregation would be sought at the dispositional hearing. At that hearing, appellant was ordered placed in the California Youth Authority for a maximum period of confinement of six years and two months, calculated by selecting five years for a 1981 robbery, eight additional months for a 1981 burglary, two months for a 1982 battery, and an additional four months for the molestation of Deborah M.

## DISCUSSION

The case against appellant hinged entirely on the credibility of one witness—Deborah M. The trial judge allowed defense counsel to pose only one question on the issue of this witness' possible bias against persons of appellant's race. For reasons explained below, we find this violated appellant's constitutional right to cross-examine the witnesses against him and therefore reverse. Since this case may be retried, in the unpublished portion of this opinion we comment on certain other issues raised by appellant.

### I. APPELLANT WAS DEPRIVED OF ADEQUATE OPPORTUNITY TO CROSS-EXAMINE AS TO THE WITNESS' RACIAL BIAS

The right of cross-examination is fundamental. It is fundamental because the Constitution guarantees it to every criminal defendant (*Smith* v. *Illinois*

(1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748]; *Chambers v. Mississippi* (1973) 410 U.S. 284 [35 L.Ed.2d 297, 93 S.Ct. 1038], Witkin, Cal. Evidence (2d ed. 1966) § 1198) and to every juvenile accused of criminal activity (*In Re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].). It also is fundamental in the sense it is the cornerstone and primary *raison d'etre* of the Anglo-American adversary system. As Justice Black observed: "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. . . ." (*Pointer v. Texas* (1965) 380 U.S. 400, 405 [13 L.Ed.2d 923, 927, 85 S.Ct. 1065].) We depend upon cross-examination to test the truth of evidence submitted to the jury or other fact finder. "Cross-examination has been described as 'the "greatest legal engine ever invented for discovery of the truth.'" [Citation omitted.]" (*People v. Brock* (1985) 38 Cal.3d 180, 197 [211 Cal.Rptr. 122, 695 P.2d 209].) Consequently, we look askance at the testimony of witnesses who cannot be subjected to cross-examination. Indeed we often exclude evidence for this very reason. (See, e.g., *Pointer v. Texas, supra,* 380 U.S. 400; *Douglas v. Alabama* (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074]; *People v. Brock, supra,* 38 Cal.3d 180.)

■ Cross-examination cannot serve its critical function unless trial lawyers are given wide latitude in the scope, subject matter and technique of their questioning. This is especially true when the cross-examiner is testing the credibility of a witness. True, California law restricts most other forms of cross-examination to the scope of the preceding direct examination. (Cal. Evidence Code, §§ 761, 773, subd. (a); Witkin Cal. Evidence (2d ed. 1966) § 1202 et. seq.; 1 Jefferson, Cal. Evidence Benchbook (1982) § 27.17.) But not so cross-examination directed at the witness' credibility. "The rule restricting cross-examination to the scope of the direct . . . cannot reasonably be applied to cross-examination designed to *impeach* the witness." (Witkin, Cal. Evidence *supra,* p. 1115. Italics in original.) There the trial judge is expected to allow a wide-ranging inquiry as to any factor which could reasonably lead the witness to present less than reliable testimony. (*Estate of Kasson* (1900) 127 Cal. 496 [59 P. 950]; *People v. Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]; Witkin, Cal. Evidence, *supra,* § 1208; 1 Jefferson, Cal. Evidence Benchbook, *supra,* pp. 799-803.)

A. *It Is Proper to Cross-examine a Witness About His or Her Possible Bias Against the Racial Group of Which the Defendant Is a Member*

As best our research can determine this is a case of first impression in California courts on one sub-issue—the propriety of cross-examination to

test whether a witness entertains a bias *against* the racial group to which a defendant or other party belongs. (But see *People* v. *Krug* (1935) 10 Cal.App.2d 172, 176 [51 P.2d 445], upholding cross-examination to show witnesses were of same nationality as defendant and thus might be biased *toward* the defendant.) Nonetheless, it is difficult to construe the California Evidence Code any other way. Moreover, this very question has been addressed frequently by courts in other jurisdictions.

■ Evidence Code section 780 defines what a jury or other fact finder may use to appraise the credibility of a witness. "[T]he court or jury may consider . . . any matter that has *any* tendency in reason to prove or disprove the truthfulness of [a witness'] testimony at the hearing, including but not limited to any of the following: . . . [¶] (f) The existence or nonexistence of a *bias,* interest, or other motive. . . ." (Cal. Evidence Code, § 780, italics added.)[2]

Proof of a witness' bias or prejudice against the specific individual who is a party in the litigation is clearly admissible. "The credibility of an adverse witness may be assailed by proof that he cherishes a feeling of hostility towards the party against whom he is called; . . . ." (*Silvey* v. *Hodgdon* (1874) 48 Cal. 185, 188; *People* v. *Hannon* (1977) 19 Cal.3d 588 [138 Cal.Rptr. 885, 564 P.2d 1203]; Witkin, Cal. Evidence, *supra,* § 1234.) ■ But what if the bias or prejudice is against the racial group of which the party happens to be a member rather than the party himself? Is the logical connection between attitude and testimony too attenuated to affect the witness' credibility?

This precise issue was addressed by a Florida Court of Appeal in 1981.

"At trial appellant's counsel attempted to cross-examine the state's key witness (a white male) as to whether he had any bias or prejudice against black persons generally, or against appellant (a black male) individually. The trial court overruled the state's objection to questions regarding individual bias against appellant, . . . . However, the court sustained the state's objection as to any questions regarding generalized bias or racial prejudice, and further prohibited that line of questioning when appellant's counsel thereafter attempted to pursue the issue. Appellant alleges that his defense

---

[2]Appellant's brief mentions the commentary to section 780 in the Deering's edition of the California Evidence Code which expands on what constitutes the sort of bias which might bear on the credibility of a witness. "The following facts and circumstances, alone or in combination, tend to prove bias on the part of a witness: . . . . (7) racial or religious prejudice." (Deering's Cal. Codes, Evidence Code, § 780, Commentary, p. 197.) Although we agree with the editorial writer's conclusion in this instance, the commentary has no official standing as support for our interpretation of section 780.

was hampered by such restriction of cross-examination, in contravention of his constitutional right to confront an adverse witness. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"[W]e find no basis for the trial court's limitation of cross-examination as to whether the state witness possessed a generalized prejudice against black persons. While the court's determination to limit cross-examination should not be disturbed absent an abuse of discretion, [citation omitted] we conclude that the present case involves such an abuse of discretion. In balancing considerations of unfair prejudice with the probative value of questions regarding a witness's racial bias, such questions have elsewhere been found proper and not unfairly prejudicial. [Citations omitted.]" (*Smith* v. *State* (Fla.App. 1981) 404 So.2d 167, 168-169.) This decision was followed recently by another district of the Florida Court of Appeal in *Lee* v. *State* (Fla.App. 1982) 422 So.2d 928, petn. den. (1983 Fla.) 431 So.2d 989.

Other jurisdictions likewise have specifically authorized cross-examination about bias against racial groups. (See *United States* v. *Lee Huen* (N.D.N.Y. 1902) 118 F. 442, 463; ["If it affirmatively appears that a witness has a bias . . . in favor of persons of his own nationality generally, or against those of another nationality, such fact may be used to discredit his testimony."]; *Magness* v. *State* (1899) 67 Ark. 594 [50 S.W. 554]; *Jacek* v. *Bacote* (1949) 135 Conn. 702 [68 A.2d 144]; *People* v. *Taylor* (1976) 190 Colo. 210, [545 P.2d 703]; *Ransey* v. *Nevada* (Nev. 1984) 680 P.2d 596, 597 [The "[d]efendant is constitutionally entitled to confront a witness and conduct cross-examination sufficient to elicit any facts which might support an inference of bias against the class to which the defendant belongs or its members."].) (Cf. *Moreno* v. *United States* (1984, D.C App.) 482 A.2d 1233, cert. den. (1985) — U.S. — [84 L.Ed.2d 362, 105 S.Ct. 1222] [exclusion of some questions harmless error because defendant able to effectively develop theme of racial bias through other cross-examination of witness]; *Com.* v. *Franklin* (1978) 376 Mass. 885 [385 N.E.2d 227] [permissible to exclude certain questions concerning witness' racial bias only because many others were allowed].) Our research has uncovered three cases from other jurisdictions which upheld the denial of cross-examination into racial bias, but only one of them even attempted to grapple with the issue. And none of them bothered to cite, let alone distinguish or refute, the several decisions listed in this opinion as approving inquiry into racial bias.[3]

---

[3]*Palmer* v. *State* (1972) 153 Ind.App. 648 [288 N.E.2d 739] justified a refusal to permit defense counsel to ask whether the witness felt black people were more likely to commit crimes than white people on grounds it called for the witness to draw a conclusion. In *State* v. *Ham* (1972) 259 S.C. 118 [191 S.E.2d 13], the South Carolina Supreme Court held the trial court could exclude a question "You don't like black people, do you?" on grounds the

In addition to decisions expressly approving cross-examination about bias against racial groups, other courts have upheld the broader principle that it is proper to inquire into bias against groups or classes to which a party belongs. "Bias of a general or pervasive sort is not, at least necessarily, less dangerous to objectivity than hostility to one individual. . . . Examination for bias and prejudice must be permitted if it is reasonable to assume that animosity to a group might prejudice the witness, either consciously or unconsciously, against a defendant who shares the characteristics of that class." (*Chipman* v. *Mercer* (9th Cir. 1980) 628 F.2d 528, 532 [constitutional right to cross-examine witness about bias against mentally retarded].) Significantly, the *Chipman* court cited some of the racial bias cases mentioned earlier in this opinion to support its holding that defendants should be allowed to cross-examine about bias against another minority group, the mentally retarded. (See also *United States* v. *Kartman* (9th Cir. 1969) 417 F.2d 893 [constitutional right to cross-examine witness about bias against war protesters]; *Smith* v. *Civil Service Board of City of Florence* (1974) 52 Ala. App. 44, [289 So.2d 614] [proper to cross-examine witness about bias against police officers].)

Returning to the California Evidence Code, we find the broad language of section 780 also supports the position taken by the clear majority of federal and state courts on this question. The test under this code provision is whether the kind of bias involved has "*any* tendency in reason" to affect the issue of credibility. It seems difficult to argue a witness could never be so influenced by racial prejudice that it clouded his perceptions or shaded his testimony or led him to deliberately lie. History tells us worse things than this have been motivated by prejudice against racial groups.

B. *The Trial Court Abused Its Discretion by Foreclosing the Defendant From Seeking to Develop More Than One Type of Evidence Indicating Possible Racial Bias*

The existence of bias may be established through cross-examination as well as extrinsic evidence. (See, e.g., *People* v. *James* (1976) 56 Cal.App.3d 876 [128 Cal.Rptr. 733]; *People* v. *Allen* (1978) 77 Cal.App.3d 924 [144 Cal.Rptr. 6].) A cross-examiner often tests the truth of a witness' testimony by probing for information the witness would not volunteer if he knew what the lawyer was driving at. (See, e.g., Mauet, Fundamentals of

---

scope of cross-examination is entirely within the discretion of the trial judge. Of the three cases, only the Louisiana Supreme Court expressly ruled inquiry into bias against a racial group is improper. "The jurisprudence in Louisiana supports the interpretation given to the statute by the trial judge, requiring that the bias that the witness is alleged to bear against the defendant be personal rather than general in nature. [Citation omitted.]" (*La.* v. *Darby* (La. 1975) 310 So.2d 547, 549.)

Trial Techniques (1980) p. 242.) Hidden sometimes subconscious bias is just this sort of information. ▇ Moreover, it generally is unnecessary for the cross-examiner to make an offer of proof when the trial court sustains an objection. (Cal. Evidence Code, § 354; 1 Jefferson, Cal. Evidence Benchbook, *supra,* p. 803.) Obviously, to make such an offer would reveal to the witness and opposing counsel the direction of the questioning.

As the United States Supreme Court has held: "It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. [Citations omitted.] To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial." (*Alford* v. *United States* (1931) 282 U.S. 687, 692 [75 L.Ed. 624, 628, 51 S.Ct. 218].)

▇ The existence of bias can be established in several fundamentally different ways, some less direct than others. (See, e.g., Schwartz, Proof, Persuasion And Cross-Examination (1979) p. 2233.) It is easy to identify at least six. First, under cross-examination, the witness may directly *admit* her bias. "Yes, I am prejudiced against blacks" is a straightforward example of this form of proof. Secondly, the witness may admit making *past statements* which are circumstantial evidence of the presence of bias. Thus, the witness' admission she has said things like "I don't think blacks should go to the same schools as whites" would tend to demonstrate the existence of such bias. Thirdly, the witness may have *acted* in ways which are consistent with the presence of bias. For example, an admission the witness had changed seats because a black sat down next to her would be an indication she entertained a bias against blacks. Fourth, a witness may admit that if confronted with a hypothetical situation she *would act or speak* in a certain way which an unbiased person would not be expected to do. "If a black asked me for a date, I would slap him," is an example of this form of evidence. Fifth, the witness may have had some personal experience which provides a *motive* to be biased. If a witness admits she has been continually teased by a group of black students, in her own mind this might give her reason to be biased against all blacks. Sixth, a witness may come from a family or social *environment* which encourages bias against certain groups. A witness who concedes her mother and father had spoken derogatorily about blacks throughout her formative years also has supplied some

evidence suggesting she may have been influenced to be biased against blacks.

This is not to say proof of any one of these indicia of bias, or even a combination, will necessarily establish a witness is so prejudiced against a given racial group he or she would lodge a false accusation or testify falsely against a defendant who happened to a member of that race. The jury or judge may well decide the witness is truthful even though racially prejudiced. But this is the inherent nature of any attempt to impugn the credibility of a witness. For instance, the fact finder may decide to believe in-court testimony even when a cross-examiner is able to show the witness made several inconsistent statements outside the court room. A trial court could not foreclose the introduction of those prior inconsistent statements merely because it felt the jury would believe the witness' testimony at trial anyway. Likewise, the court should not be allowed to unduly circumscribe cross-examination about racial prejudice merely because it feels the witness will be believed even if shown to be biased against the defendant's race.

Generally, it is proper cross-examination to seek to develop any—or all—of these six kinds of evidence of racial bias, and probably others. Moreover, it is difficult to argue a defendant is afforded his constitutional right to cross-examine on the issue of bias if he is denied the chance to pursue one of these discrete avenues of inquiry, even if he has been allowed to pursue others. For instance, merely because a witness denies having had experiences which would give her a motive for bias against a given racial group does not mean further cross-examination won't lead her to admit she has acted or spoken in ways indicating she indeed has such a bias. Or under further cross-examination she may outright admit she is prejudiced against members of this race or that she was brought up to dislike them.

 In the instant case, defense counsel was only allowed to ask one question about the witness' racial bias. This question, of course, only sought to elicit one form of evidence of bias—in this instance, an outright admission the witness was prejudiced against blacks. This left at least five other discrete avenues of inquiry completely unexplored. When defense counsel sought to shift to a second type of evidence—the witness' actions toward members of this racial group—the trial court refused to allow him to pose even one question which might develop this second symptom of racial prejudice. We have no trouble concluding this represented an abuse of discretion in failing to grant defense counsel the "wide latitude" of cross-examination to which his client was constitutionally entitled.[4]

---

[4]In most instances, cross-examination about racial bias is likely to be a risky enterprise for the cross-examiner and his client. The trial lawyer will be treading into sensitive territory where it is easy to offend the jury or other fact finder or to elicit reactions from the witness which will harm rather than help the client's cause. But this is a different question than whether these are legally permissible lines of inquiry.

■ This is not to say the Constitution completely takes away the trial court's power to limit and control inquiry into the issue of a witness' racial bias. Instead, it is to say "a certain *threshold level* of cross-examination is *constitutionally required,* and in such cases the discretion of the trial judge is obviously circumscribed." (*Chipman* v. *Mercer, supra,* 628 F.2d 528, 530, italics added.) Furthermore, a cross-examination does not step over this constitutional threshold until the witness' various possible biases have been rather thoroughly explored. "When the cross-examination relates to impeachment evidence, the test as to whether the trial court's ruling violated the sixth amendment is 'whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness.' [Citations omitted.]" (*Ibid.*)

■ In any event, the cross-examination in this case never came even remotely near the threshold where discretion arguably could have been exercised to foreclose further inquiry about this witness' racial bias. This is not a situation where, for instance, the cross-examiner already has struck out with three or four of the fundamental lines of inquiry and now seeks to start out on another. Nor had this cross-examiner already asked a large number of questions in pursuit of one of these lines of inquiry without yielding any results and then sought to continue along the same path. It is not even the case where the cross-examiner has been pursuing several lines of inquiry without success for an hour, or a half hour, or even 15 minutes. And it most certainly is not a case where the cross-examiner elicited ample evidence of racial bias and now seeks to draw out cumulative testimony on the same topic. Instead what we have here is a lawyer seeking to ask his second question and thus to begin his second line of inquiry in perhaps his second minute of questioning on the topic of the witness' possible racial bias. In these circumstances it is clear the defense counsel's client was effectively denied his constitutional right to confront and cross-examine the chief witness against him.

C. *This Denial of the Constitutional Right to Effective Cross-examination of the Principal Prosecution Witness Is Reversible Per Se*

In this case we hold appellant Anthony P. was denied the right of *effective* cross-examination. Denial of this right, in turn, violates his right to confront the witnesses against him guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. (*Pointer* v. *Texas, supra,* 380 U.S. 400, 405-407 [13 L.Ed.2d 923, 927-928]) and article I, section 15 of the California Constitution; *People* v. *Brock, supra,* 38 Cal.3d 180.) We further find this specie of error to be prejudicial per se at least where, as here, it involves a principal witness against the accused.

The United States Supreme Court has decided squarely what constitutes prejudicial error when a trial court unduly circumscribes cross-examination on the issue of bias. *Davis* v. *Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105] involved a situation akin to the instant case. "While counsel was permitted to ask Green [a principal prosecution witness] *whether* he was biased, counsel was unable to make a record from which to argue *why* Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." (415 U.S. at p. 318 [39 L.Ed.2d at p. 355]; italics in original.) Chief Justice Burger then wrote for a seven member majority: "[I]t seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, . . . could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of *effective* cross-examination which ' "would be constitutional error of the first magnitude and *no amount of showing of want of prejudice would cure it.* " ' [Citations omitted.]" (*Davis* v. *Alaska, supra,* 415 U.S. 308, 318 [39 L.Ed.2d 347, 355]; italics added. (See also *Brookhart* v. *Janis* (1966) 384 U.S. 1 [16 L.Ed.2d 314, 86 S.Ct. 1245]; *Smith* v. *Illinois* (1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748].)

Here, as in *Davis,* the trial court allowed the defendant to inquire whether the witness was biased against him. However, as in *Davis,* the judge refused him the opportunity to draw out other evidence which might have led the fact finder to conclude the witness was biased despite an initial denial of prejudice. This refusal, as in *Davis,* deprived appellant Anthony P. of his "right of *effective* cross-examination" and qualifies as a "constitutional error of the first magnitude." Indeed under *Davis* and related decisions it is error per se and compels reversal of the judgment against appellant Anthony P.

II. OTHER GROUNDS OF THIS APPEAL WOULD NOT REQUIRE REVERSAL*

. . . . . . . . . . . . . . . . . . . .

DISPOSITION

The order finding appellant committed violations of Penal Code sections 647a and 242 is reversed and the case remanded for further proceedings

*See footnote, *ante,* page 502.

consistent with this opinion.

Lillie, P. J., and Thompson, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 15, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.