|1JONES, Judge,
dissenting in part, with reasons:
I agree with the conclusion of the majority that evidence of Evans’ prior arrest is admissible for purposes of impeachment inasmuch as he specifically denied ever having been arrested in his deposition.
However, I find no basis for ruling that the details and statements made at the time of arrest are inadmissible for any purposes. I find nothing in the record before us to substantiate the statement that plaintiffs are seeking to introduce Evans’ prior arrest record only to show general bias against all black people. Rather, certain details of the arrest record are also relevant to show that in Evans was not only accused of punching a black person whom he did not know, but that at the time of this offense he was also accused of impersonating a police officer. This fact has significance when considered in conjunction with the testimony given in his deposition. When asked if he had ever been arrested in his deposition, Evans gratuitously replied “No. I’m and ex-policeman, I don’t think so.” When questioned further on cross-examination he testifies that he worked in “cemetery police for seven years” throughout the City of New Orleans. The similarity between this assertion of an affiliation with law enforcement is strikingly similar to the assertion made to the battery victim in the arrest incident that he was a police officer.
Given the laying of a proper foundation and the production of witnesses having direct knowledge, details of this allegedly independent witness’ previous arrest record are directly relevant to the paramount issue of the credibility ofj^Evans.
I also disagree with the majority’s conclusion that whether Evans called the punching victim a “nigger” is not personal to this case since the alleged bias in this case was in no way related to plaintiffs and allegedly took place almost ten months before the accident sued upon.
In light of the fact that these plaintiffs are black and this particular approbation is a derogatory remark that has been reserved almost exclusively for black people in this country, I imagine these black plaintiffs certainly would consider such a reference as personal. To ignore the historical usage of this word and find no personal bias against these black plaintiffs simply because the reference was made concerning other blacks ignores the harsh reality of racial bias exhibited by person who in these modern times continue to resort to the use of such racial epithets. The details of the prior arrest are highly probative of the credibility of this particular witness in issues dealing with disputes between blacks and whites. This is particularly true in this case where the expected testimony of this particular witness will be that the black plaintiff backed up and hit the 18 wheeler truck. Since Evans is the only witness expected to substantiate this version of how the accident occurred, the testimony on its face might be considered unusual, particularly since the defendant has not stated that this is what occurred. Any probative evidence tending to show a bias on the part of this witness should not be excluded.
I certainly am not in accord with the puzzling statement made by the majority that “There is no indication that plaintiffs and Evans were in any way acquainted prior to the accident which he witnessed. Even if Evans does have a general bias against black *797 people as evidenced by the alleged statement, it is impossible for plaintiffs to show that Evans had a personal bias against them”. Simple logic would seem to dictate that if Evans has a bias against black people |3and the plaintiffs are black, more than likely Evans has a bias against the plaintiffs. This logic would apply whether Evans was acquainted with the plaintiffs or not. The details of the prior arrest pointedly demonstrate this fact. Certainly, Evans did not know the black victim that he allegedly punched in the face. Indeed, Evans stopped the victim because he apparently did not know him and told him to leave the area because “he did not belong here.”
While no cases can be located wherein our courts have expressly addressed the issue of whether details of an arrest record are admissible to show bias on the part of a witness, courts from other jurisdictions have found that for purposes of cross examination, evidence of bias against the racial group of which a party happens to be a member rather than the party himself is admissible in certain situations. See In re Anthony P., 167 Cal.App.3d 502, 213 Cal.Rptr. 424 (Cal.App. 2 Dist.,1985) wherein the court of Appeal, Second District found that denial of a defendant’s sixth amendment constitutional right to effective cross examination of the prosecution’s principal witness concerning her racial prejudice was reversible error. In concluding that no basis existed for limiting cross-examination as to whether the state witness possessed a generalized prejudice against black persons the court noted the reasons for allowing wide latitude in this area when it stated:
In addition to decisions expressly approving cross-examination about bias against racial groups, other courts have upheld the broader principle that it is proper to inquire into bias against groups or classes to which a party belongs. ‘Bias of a general or pervasive sort is not, at least necessarily, less dangerous to objectivity than hostility to one individual ... Examination for bias and prejudice must be permitted if it is reasonable to assume that animosity to a group might prejudice the witness, either consciously or unconsciously against a defendant who shares the characteristics of that class.’ (Chipman v. Mercer (9th Cir.1980) 628 F.2d 528, 532 [constitutional right to cross-examine witness about bias against mentally retarded].) ...
^Returning to the California Evidence Code, we find the broad language of section 780 also supports the position taken by the clear majority of federal and state courts on this question. The test under this code provision is whether the kind of bias involved has ‘any tendency in reason’ to affect the issue of credibility. It seems difficult to argue a witness could never be so influenced by racial prejudice that it clouded his perceptions or shaded his testimony or led him to deliberately lie. History tells us worse things than this have been motivated by prejudice against racial groups.
In re Anthony P. at 510, 213 Cal.Rptr. 424.
Similar sentiments were expressed in Ransey v. Nevada, 100 Nev. 277, 680 P.2d 596 (1984) wherein the Supreme Court of Nevada concluded that a district court’s complete preclusion of any cross-examination of a white victim allegedly kidnapped by a black defendant on the subject of racial bias was error (albeit harmless error in the particular case). The reasons for allowing wide latitude in establishing bias were aptly detailed in Ransey v. State of Nevada, 100 Nev. 277, 680 P.2d 596 (Nev.1984) where the court, in a per curiam stated:
The bias of a witness is always relevant to the factfinder’s assessment of credibility.... A criminal defendant is entitled to cross-examine a witness to expose any facts which might lay a foundation for an inference that the witness’ testimony is influenced by bias or prejudice. ‘Where [the] purpose [of cross-examination] is to expose bias ... [the] examiner must be permitted to elicit any facts which might color a witness’ testimony,’ and the trial court’s usual discretion to control the scope of cross-examination on the question of bias infringes upon the accused’s sixth amendment right of confrontation....
Whether a witness harbors a bias against a class of which the defendant is a member, or against individuals solely because of that class membership, is a relevant question that must be subject to defense cross-examination in a criminal trial. *798 The defendant is constitutionally entitled to confront a witness and conduct cross-examination sufficient to elicit any facts that might support an inference of bias against the class to which the defendant belongs or its member-(citations omitted)
Ransey v. State of Nevada, 100 Nev. at 278, 680 P.2d at 597.
I fail to understand how the rights accorded litigants in civil cases should |r>be considered any less worthy of protection than the rights accorded litigants in criminal cases. The right to confront witnesses in civil cases is equally crucial. For this reason, I see no reason to restrict cross examination, except in cases where the evidence sought to be introduced has no probative value. Such is not the case here.
To hamstring the plaintiffs from presenting details of this alleged eyewitness’ prior arrest and to allow the defendants to present Evans as an independent eyewitness who has no reason to lie when the details of the prior arrest may very well demonstrate a predisposition and/or prejudicial attitude toward persons of the plaintiffs’ race is patently unfair.
I would affirm the ruling of the trial court on this threshold evidentiary question. Accordingly, I dissent from that portion of the majority’s opinion which would prohibit the plaintiffs from admitting details of the witnesses’ prior arrest.